IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

DNT, LLC,

    Plaintiff,

v.

Civil Action Number 3:09CV21

SPRINT SPECTRUM, LP and NEXTEL
OPERATIONS, INC., et al.,

    Defendants.

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on several evidentiary and miscellaneous trial Motions filed by the parties to this dispute. Plaintiff DNT, LLC ("DNT") and Defendants Sprint Spectrum, LP and Nextel Operations, Inc., et al. ("Defendants") each filed ten (10) Motions in Limine. For the reasons stated below, Defendants' Motions in Limine Nos. 1-3, 6-8 are DENIED (Doc. Nos. 340, 342, 344, 350, 353 & 359) and their Motions in Limine Nos. 4-5, 9-10 are GRANTED. (Doc. Nos. 346, 348, 367 & 481.) Defendants' Unopposed Motion to Excuse T-Mobile's Local Counsel (Doc. No. 453) is also GRANTED.

DNT's Motions in Limine Nos. 2-4, 6, 8-10 (Doc. Nos. 382, 383, 389, 400, 408, 439 & 447) are DENIED. DNT's Omnibus Motion in Limine No.1 (Doc. No. 381), Motion in Limine No. 5 (Doc. No. 384), and Motion in Limine No. 7 (Doc. No. 407) are GRANTED in part and DENIED in part. Additionally, DNT's Motion for Leave to File Amended Expert Report of Paul Benoit (Doc. No. 451) is GRANTED. DNT's Motion to Compel Defendants to Produce Licenses (Doc. No. 404), Motion to Strike Defendants' Deposition "Counter" Designations (Doc. No. 448), and Motion for Leave to File Second Amended Complaint (Doc. No. 458) are DENIED.

1

**I. BACKGROUND**

This case concerns allegations of patent infringement. The patent at issue is U.S. Patent No. RE 37, 660 ("'660 Patent"). The '660 Patent constitutes a reissue of U.S. Patent No. 5,452,352 ("'352 Patent"). The inventor, David Talton, applied for the '352 Patent on March 20, 1990. The U.S. Patent and Trademark Office ("PTO") issued the '352 Patent on September 19, 1995. Two years thereafter, on September 19, 1997, Talton filed a reissue application. The resulting '660 Patent, issued April 16, 2002, mirrors the '352 Patent and contained identical abstract language and description, but included one new independent claim (Claim No.21), and five new dependent claims (Claim Nos. 22-26). (See '660 Patent, at 8:21-50.)

The '660 patent was assigned to Acacia Patent Acquisition LLC ("APA") in 2008. Taltwell, LLC ("Taltwell") was the assignee of the patent prior to Acacia. Taltwell was involved in patent litigation relating to the '660 patent from September 4, 2007 until May 23, 2008 with Zonet USA Corp., et al. ("Zonet"), which settled in May of 2008. On January 9, 2009, DNT commenced this lawsuit alleging that various wireless modem cards offered or sold by Sprint Spectrum, LP and Operations, Inc. ("Sprint"), Cellco Partnership d/b/a Verizon Wireless ("Verizon"), T-Mobile USA, Inc. ("T-Mobile"), Alltell Corporation ("Alltell"), United States Cellular Corporation ("U.S. Cellular"), and Cricket Communications, Inc. ("Cricket") infringed the '660 patent.[1] On March 31, 2009, the Court granted a Motion to Intervene filed by Novatel Wireless, Inc. ("Novatel"), which sought to intervene by virtue of its designing and producing several products sold and offered by Sprint accused of infringement within DNT's Complaint. On July 24, 2009, the Court held a hearing pursuant to Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995), in order

---

[1] DNT voluntarily dismissed Cricket Communications, Inc. pursuant to Federal Rule of Civil Procedure 41(a) on January 28, 2009.

to consider the position of the parties as to certain terms contained in Claim Nos. 21-26. The Court issued a Claim Construction Order on those terms on August 5, 2009. (Doc. No. 142.)

## II. DISCUSSION

A. LEGAL STANDARD

"Preliminary questions concerning the qualification of a person to be a witness . . . or the admissibility of evidence shall be determined by the court." Fed. R. Evid. 104(a). Rule 702 allows for opinion testimony by an expert. According to the Rule,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.[2] "When a party seeks to admit any expert testimony, the district court's obligation is 'gate-keeping.'" Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 261 (4th Cir. 2005) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999)). That is, because "expert witnesses have the potential to 'be both powerful and quite misleading,'" the Court must "ensure that any and all scientific testimony . . . is not only relevant, but reliable." Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001) (citing Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999) and Daubert, 509 U.S. at 588, 595); see also Richmond Med. Ctr. for Women v. Herring, 527 F.3d 128, 134 n.1 ("Under Federal Rule of Evidence Rule 702 expert testimony must be both relevant and reliable.").

B. DEFENDANTS' MOTIONS

---

[2] Of course, an individual qualified as an expert may base his or her opinion on "facts or data . . . perceived by or made known to the expert at or before the hearing." Fed. R. Evid. 703.

3

### 1. Defendants' Motion in Limine No. 1 to Preclude Claims of Inventorship Prior to Patent Filing Date (Doc. No. 340)

Defendants' Motion is DENIED. The Motion was moot because DNT agreed that it would not argue for, or seek in any way, a ruling that it was entitled to a date of inventorship prior to the priority date of the '660 Patent, March 20, 1990.

### 2. Defendants' Motion in Limine No. 2 to Preclude DNT's Waiver of Privilege (Doc. No. 342)

Defendants' Motion is DENIED. The Motion was made moot by DNT's assertion that it would not probe into communications over which Mr. Talton and/or his attorney asserted privilege during depositions. If during trial DNT asked a potentially offending question, the Defendants could object and the Court would rule appropriately.

### 3. Defendants' Motion in Limine No. 3 to Preclude Plaintiff from Using a Noncomparable License in Support of its Damages Claim (Doc. No. 344)

Defendants' Motion is DENIED. The Motion was made moot by DNT's agreement that the Qualcomm license is not a comparable license under Georgia-Pacific factor 2. DNT's Expert, Paul Benoit, did not rely on the Qualcomm license as a comparable license under Georgia-Pacific factor 2.

### 4. Defendants' Motion in Limine No. 4 to Preclude Plaintiff from Introducing Evidence Relating to Pre-Suit Inducement of Infringement (Doc. No. 346)

Defendants' Motion is GRANTED. The Motion was unopposed by DNT. Additionally, DNT did not plead pre-suit inducement in either its original complaint or its amended complaint.

### 5. Defendants' Motion in Limine No. 5 to Preclude Plaintiff from Seeking a Ruling on Alleged Willful Infringement (Doc. No. 348)

Defendants' Motion is GRANTED. The Motion was unopposed by DNT. Additionally, DNT did not plead willful infringement in either its original complaint or amended complaint.

6. Defendants' Motion in Limine No. 6 to Exclude the Testimony of DNT's Expert Paul Benoit (Doc. No. 350)

Defendants' Motion is DENIED. Mr. Benoit's methods survive a Federal Rule of Civil Procedure 702 analysis. His experience, education, and training allow him to qualify as an expert, and his particular expertise is relevant to issues in this case. The matters that Defendants complain about in this Motion are for the most part factual disputes which are not appropriate subjects for a Daubert discussion. Defendants' objection goes to the weight to be given to Mr. Benoit's testimony, and not to admissibility.

7. Defendants' Motion in Limine No. 7 to Exclude Certain Testimony of DNT's Expert Michael Mayfield (Doc. No. 353)

Defendants' Motion is DENIED. Mr. Mayfield survives Federal Rule of Civil Procedure Rule 702 analysis. His training and experience are sufficient to qualify him as an expert. His proposed testimony is relevant, and his methods and the science upon which he relies is reliable enough to meet the requirements of Rule 702. Defendants' objections to his proposed testimony go to weight and not admissibility.

8. Defendants' Motion in Limine No. 8 to Exclude Evidence or Argument Related to DNT's Theory of Infringement Based on Doctrine of Equivalents (Doc. No. 359)

Defendants' Motion is DENIED. Defendants have suffered no prejudice because of the opinions disclosed in Dr. Rajeev Barua's September 19, 2009 rebuttal report. Defendants had an adequate opportunity to respond to the report, and in fact, Dr. Kevin Negus, Defendants' expert, did respond. Dr. Barua's doctrine of equivalents opinions in his rebuttal report were prompted by

the Defendants' position in their opening expert report.

9. Defendants' Motion in Limine No. 9 to Preclude Evidence or Argument Relating to Defendants' Claim Construction Positions (Doc. No. 368)

Defendants' Motion is GRANTED as the Motion was unopposed. The parties' proposed claim constructions which were not adopted by the Court are not relevant and would certainly increase the risk of jury confusion.

10. Defendants' Motion in Limine No. 10 to Preclude DNT's Rebuttal Witnesses from Offering Expert or Irrelevant Testimony (Doc. No. 481)

For the reasons stated from the bench, Defendants' Motion is GRANTED.

11. Defendants' Unopposed Motion to Excuse T-Mobile's Local Counsel (Doc. No. 453)

Defendants' Motion is GRANTED. The absence of T-Mobile's local counsel from the trial would cause no disruption or delay. Additionally, the Motion was unopposed.

C. PLAINTIFF'S MOTIONS

1. Plaintiff's Omnibus Motion in Limine No. 1 (Doc. No 381)

In Plaintiff's Omnibus Motion in Limine, DNT sought to preclude the Defendants or counterclaim Plaintiffs from presenting, at trial and during voir dire, all testimony, questions, references, arguments, and evidence as to numerous topics. The Court GRANTS in part and DENIES in part Plaintiff's Motion for the reasons stated below.

a. DNT's Omnibus Motion is GRANTED as to the following:

I. Interpretation or application of claim limitations contrary to the Court's Claim Construction Order.

Once the Court has construed the terms as required by the Markman hearing, the parties are bound by said construction. The granting of Plaintiff's Motion does not preclude the Defendants

from introducing evidence as to the plain and ordinary meaning of terms not construed by the Court to one skilled in the art. The appropriateness of this latter kind of evidence can only be judged in the context of the trial.

ii. <u>The "relative importance" of claim elements or that one element of Claim 21 is the "sole novel feature."</u>

Any such argument is irrelevant and legally erroneous, because the claims define the invention as a whole and each element of a patent claim is material.

iii. <u>Anything tending to disparage the patent and trademark office.</u>

Here the key word is disparage–which the court took to mean either a negative, direct, or individualized attack on the patent examiner, performance, or a generalized attack on the entire PTO. This would not be appropriate. Of course, the granting of this motion does not prevent the presentation of alleged relevant prior art not reviewed by the patent examiner. Nor does it prevent the Defendant from presenting evidence and argument that the patent as allowed by the examiner does not enable one of ordinary skill to make and use the full scope of the invention.

v. <u>Derogatory terms such as "patent troll."</u>

As to the term "patent troll," this part of Plaintiff's Motion is granted because the prejudicial impact outweighs any probative value. Additionally, Defendants agreed not to use such term.

vii. <u>References to attorneys' fees or fee arrangement with DNT's counsel.</u>

Such information is not relevant to the issues of invalidity or infringement of the patent suit. Additionally, Defendants agreed not to present any evidence on argument about Plaintiff's attorneys' fees.

viii. <u>References to DNT's counsels' other clients or other cases in which they are involved.</u>

This information is not relevant and could be prejudicial.

ix.  <u>Inventor David Talton's financial status.</u>

This information is not relevant to the issues before the Court. However, the Plaintiff could make the issue relevant during the presentation of its case.

<u>b. DNT's Omnibus Motion is DENIED as to the following:</u>

iv.  <u>DNT's parent company Acacia.</u>

The evidence regarding Acacia is relevant and admissible. Acacia is in the chain of the Patent title. Additionally, the contractual arrangements between Taltwell, LLC, and Acacia regarding the '660 Patent and the monetary interest that flows therefrom to witnesses David Talton and William Wells is relevant to the issue of witness bias.

v.  <u>Terms such as "shell company" or "non-practicing entity."</u>

These are neutral terms and if accurate may be utilized.

vi.  <u>The prior Zonet litigation.</u>

Some <u>Zonet</u> information may be relevant and other information may not be relevant. The Court will make determinations within the context of trial.

x.  <u>Bradley Botsch's testimony during Defendants' case in chief.</u>

This is not a decision to be made prior to trial. Instead, this decision should be made in the context of the trial.

<u>2. Plaintiff's Motion in Limine No. 2 to Exclude Litigation of Settlement Agreements (Doc. No. 382)</u>

DNT's Motion is DENIED as the Zonet settlement agreement is relevant to Defendants' marking defense.

<u>3. Plaintiff's Motion in Limine No. 3 to Exclude Alleged Worldport Prior Art (Doc. No. 383)</u>

For the reasons stated from the bench, Plaintiff's Motion in Limine No. 3 to exclude the alleged WorldPort prior art is DENIED.

4.  Plaintiff's Motion in Limine No. 4 to Exclude Certain Additional Testimony of Dr. Mihran (Doc. No. 389)

Dr. Mihran's testimony appeared to be relevant and admissible.  Plaintiff could object as needed in context.

5.  Plaintiff's Motion in Limine No. 5 to Exclude Certain Prior Art and Identification of Prior Art to be Presented at Trial (Doc. No 384)

For the reasons stated from the bench, Plaintiff's Motion is DENIED in part and GRANTED in part.

6.  Plaintiff's Motion in Limine No. 6 to Exclude the Testimony of Christopher Coffin (Doc. No. 400)

Plaintiff's Motion to exclude the testimony of Christopher Coffin is DENIED.  If the Worldport prior art stays in the case, Coffin's testimony is relevant and admissible.  DNT had ample opportunity to depose the witness and he has produced several hundred documents relevant to the subject matter of his testimony.

7.  Plaintiff's Motion in Limine No. 7 to Exclude the Testimony of John Bone (Doc. No. 407)

For the reasons stated from the bench, Plaintiff's Motion to exclude the testimony of Mr. John Bone is DENIED in part and GRANTED in part.

8.  Plaintiff's Motion in Limine No. 8 to Exclude Certain Testimony of Dr. Kevin Negus (Doc. No. 408)

Plaintiff's Motion to exclude testimony of Dr. Negus is DENIED.  Dr. Negus' training and

9

significant professional experiences were sufficient to allow his opinion testimony regarding (1) whether any alleged alternative technologies are commercially acceptable, (2) whether or how consumer demand would be affected by a change in technologies, and (3) the cost to Defendants of any change in technologies.  His professional experience made him particularly knowledgeable about this kind of financial and marketing information.

> 9.  Plaintiff's Motion in Limine No. 9 to Exclude Witnesses Not Timely Disclosed (Doc. No. 439)

For the reasons stated from the bench, Plaintiff's Motion to exclude testimony of witnesses not timely disclosed pursuant to 26(b) is DENIED.

> 10.  Plaintiff's Motion in Limine No. 10 to Preclude Defendants from Inquiring into Privileged Matters (Doc. No. 447)

For the reasons stated from the bench, Plaintiff's Motion is DENIED.

> 11.  Plaintiff's Motion to Compel Licenses (Doc. No. 404)

For the reasons stated from the bench, Plaintiff's Motion is DENIED

> 12. Plaintiff's Motion to Strike Defendants' Deposition "Counter" Designations (Doc. No. 448)

Plaintiff's Motion is DENIED.  Defendants' counter designations were not violative of the Court's Pretrial Order.

> 13. Plaintiff's Motion for Leave to File Amended Expert Report of Paul Benoit Reflecting the Court's Summary Judgment Ruling.  (Doc. No. 451)

Plaintiff's Motion is GRANTED.  Because the Court's summary judgment ruling has removed certain of Defendants' accused devices from the case, it was obviously necessary for Plaintiff's expert, Mr. Benoit, to amend his expert report.

14. Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. No. 458)

For the reasons stated from the bench, Plaintiff's Motion is DENIED.

## IV.  CONCLUSION

For the reasons outlined above and per the Court's Orders of December 1, 2009 (Doc. Nos. 463 & 467) the Court resolves the Motions as stated.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

> _____/s/_____
> James R. Spencer
> Chief United States District Judge

ENTERED this  11th   day of February 2010