IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| DNT, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>SPRINT SPECTRUM, LP and NEXTEL OPERATIONS, Ind., et al.<br><br>          Defendants. | Civil Action Number 3:09CV21 |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on a number of post-trial Motions filed in the above action. Defendants Sprint Spectrum, LP and Nextel Operations, Inc., et al. ("Defendants") Motion to Declare Case Exceptional (Doc. No. 538), Non-Party Qulacomm's Motion for Costs and Fees Pursuant to Federal Rule of Civil Procedure 45 (Doc. No. 546), Defendants' Joint Renewed Motion for Judgment as a Matter of Law of Invalidity Under 35 U.S.C. § 251 (Doc. No. 554), DNT's Motion for a New Trial or to Amend the Judgment (Doc. Nos. 555 & 556), and DNT's Motion to Strike Defendants' Reply in Support of Bill of Costs (Doc. No. 572). For the reasons expressed below, the Court DENIES all of the above Motions.

### I. BACKGROUND

This case concerns allegations of patent infringement. The patent at issue is U.S. Patent No. RE 37, 660 ("'660 Patent"). The '660 Patent constitutes a reissue of U.S. Patent No. 5,452,352 ("'352 Patent"). The inventor, David Talton, applied for the '352 Patent on March 20, 1990. The U.S. Patent and Trademark Office ("PTO") issued the '352 Patent on September 19, 1995. Two years thereafter, on September 19, 1997, Talton filed a reissue application. The resulting '660 Patent,

1

issued April 16, 2002, mirrors the '352 Patent and contained identical abstract language and description, but included one new independent claim (Claim No. 21), and five new dependent claims (Claim Nos. 22-26). (See '660 Patent, at 8:21-50.)

The '660 patent was assigned to Acacia Patent Acquisition LLC ("Acacia" or "APA") in 2008. Taltwell, LLC ("Taltwell") was the assignee of the patent prior to Acacia. Taltwell was involved in patent litigation in this District relating to the '660 patent from September 4, 2007 until May 23, 2008 with Zonet USA Corp., et al. ("Zonet"), which settled in May of 2008. On January 9, 2009, DNT commenced this lawsuit alleging that various wireless modem cards offered or sold by Sprint Spectrum, LP and Operations, Inc. ("Sprint"), Cellco Partnership d/b/a Verizon Wireless ("Verizon"), T-Mobile USA, Inc. ("T-Mobile"), Alltell Corporation ("Alltell"), United States Cellular Corporation ("U.S. Cellular"), and Cricket Communications, Inc. ("Cricket") infringed the '660 patent.[1] On March 31, 2009, the Court granted a Motion to Intervene filed by Novatel Wireless, Inc. ("Novatel"), which sought to intervene by virtue of its designing and producing several products sold and offered by Sprint which were accused of infringement within DNT's Complaint.

The Court held a jury trial in this case from December 3 to December 14, 2009. The Defendants raised a defense of invalidity based on a lack of enablement under 35 U.S.C. § 112, that the invention was anticipated under 35 U.S.C. § 102, that the invention was obvious under 35 U.S.C. § 103, and that the patent contained an inadequate written description under 35 U.S.C. § 112. In its verdict, the jury found that the asserted patent claims were invalid for three reasons: (1) the full scope of the invention was not enabled; (2) the invention as claimed in Claim Nos. 21, 23-25 was obvious in view of the prior art; and (3) written description did not support the full scope of the invention.

---

[1] DNT voluntarily dismissed Cricket Communications, Inc. pursuant to Federal Rule of Civil Procedure 41(a) on January 28, 2009.

Accordingly, on January 15, 2010, the Court entered a Judgment reflecting the jury's verdict dismissing DNT's action on the merits. The Judgment directed Defendants to recover costs, finding that none of Defendants' wireless network adapter products infringe Claims 21, 23, 24 or 25 of the '660 patent for the reasons found by the jury.

Pursuant to the Court's briefing schedule, the parties filed several post-trial Motions, including those listed above. Presently before the Court are Defendants' Motion to Declare Case Exceptional, Defendants' Joint Renewed Motion for Judgment as a Matter of Law, DNT's Motion for a New Trial, or in the Alternative, to Amend the Judgment, DNT's Motion to Strike Defendants' Reply, and Non-Party Qualcomm's Motion for Costs and Fees Pursuant to Federal Rule of Civil Procedure 45.

## II. DEFENDANTS' MOTION TO DECLARE CASE EXCEPTIONAL

Section 285 of the Patent Act states that "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An award of attorneys' fees under section 285 involves a two-part determination. "First, a district court must determine whether the prevailing party has proven an exceptional case by clear and convincing evidence . . . Second, if the district court finds the case exceptional, it must then determine whether an award of attorney fees is appropriate." Pericone v. Medicis Pharm. Corp., 432 F.3d 1368, 1380 (Fed. Cir. 2005).

The existence of an exceptional case may be proven by showing: inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement. Epcon Gas Sys., Inc. v. Bauer Compressors, Inc., 279 F.3d 1022, 1034 (Fed. Cir. 2002)(citing Hoffmann-La Roche Inc. v. Invamed Inc., 213 F.3d 1359, 1365 (Fed Cir. 2000)). "[L]itigation misconduct and unprofessional behavior may suffice, by themselves, to make a case exceptional under § 285." Rambus Inc. v. Infineon Techs. AG, 318 F.3d 1081, 1106 (Fed. Cir. 2003). Awarding attorneys fees pursuant to § 285 should be limited to circumstances in which it is

3

necessary to prevent "a gross injustice" or bad faith litigation. Forest Labs., 339 F.3d at 1329.

To award attorneys' fees, the Court must find that Defendants have demonstrated by clear and convincing evidence that DNT's litigation conduct was so egregious that attorneys' fees are warranted. Defendants assert several arguments relating to DNT's conduct prior to its filing of the Complaint which they argue demonstrate that the case is exceptional and warrants attorneys' fees:

> (1) DNT lacked sufficient justification for its infringement allegations against Defendants;
> (2) DNT failed to exercise reasonable care in assessing infringement allegations prior to bringing suit;
> (3) DNT failed to adequately examine and test accused devices;
> (4) DNT possessed sufficient information indicating an absence of infringement and its failure to act upon it deprives DNT of good faith; and
> (5) DNT had no reasonable basis for believing the asserted claims were valid.

Defendants also assert that DNT engaged in multiple acts of misconduct throughout the litigation, forcing Defendants to incur substantial litigation fees and expenses, and subjecting them to increased litigation expenses. This includes:

> (1) DNT's responses in answering requests for admissions;
> (2) DNT's alleged failure to disclose the Radio Shack device in the inventor's deposition or in response to interrogatories;
> (3) the delay of over six years in instituting its patent infringement action;
> (4) DNT's assertion of an allegedly invalid claim added in reissue that was not disclosed in the specification, claims, or drawings as originally filed.

The Court does not find that Defendants have presented clear and convincing evidence that DNT's Complaint was frivolous, and thus have not met their burden to show that the case is exceptional. Although the litigation in this matter was hard fought and Defendants prevailed, that does not mandate a finding that DNT's case against Defendants was frivolous. Several factors advise against this finding, including the fact that DNT's Reissue Patent was granted by the PTO, giving DNT a reasonable belief that the Patent was valid and enforceable.

Additionally, Defendants filed several Motions for Summary Judgment, which DNT survived, meaning that the Court considered DNT's claim and found that DNT presented enough evidence for

4

the case to move forward and go to the jury. Although the jury ultimately decided against DNT, this does not necessarily mean that the case was brought in bad faith. Therefore, the Court finds that an exceptional case declaration is not warranted in this instance. Additionally, DNT's requests for attorneys' fees associated with this Motion are DENIED.

### III. DNT's MOTION FOR A NEW TRIAL OR TO AMEND THE JUDGMENT

A new trial under Federal Rule of Civil Procedure 59 should be granted if: "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Id. When considering a motion for a new trial, a court is "permitted to weigh the evidence and consider the credibility of witnesses." Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998). "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial ... unless refusal to take such action appears to the court inconsistent with substantial justice." Thompson v. Direct Impact Co., 63 F. Supp. 2d 721, 723-24 (E.D.Va.1998) (citing Fed. R. Civ. P. 61).

"The decision to grant or deny a motion for a new trial is within the sound discretion of the district court and will not be disturbed absent a clear showing of abuse of discretion." King v. McMillan, 594 F.3d 301, 314-15 (4th Cir. 2010) (citing Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp., 51 F.3d 1229, 1237 (4th Cir. 1995)).

Rule 59(e) provides a means for an aggrieved party to move the Court to alter or amend a judgment. The Fourth Circuit has recognized three grounds for amending an earlier judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993) (internal citations omitted). This remedy "is an

extraordinary remedy which should be used sparingly." Pacific Ins. Co. v. American Nat. Fire Ins. Co., 148 F.3d 396, 403 (4th Cir.1998). Rule 59(e) motions may not be used "to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." Id. Also, "[r]ule 59(e) may not be used to resurrect facts and legal theories already considered and rejected by the court." Id.

DNT seeks a new trial to correct what it alleges is clear error of law on the validity of the '660 Patent, and to prevent manifest injustice based on its argument that the jury verdict is inherently flawed. In the alternative, DNT seeks amendment of the judgment in order to correct portions of the jury verdict directed to obviousness, enablement, and written description. Specifically, DNT asserts that: (1) the presumption of patent validity of the asserted claims has not been clearly and convincingly supplanted on enablement or obviousness; (2) the invalidity tests articulated and applied by Defendants' expert were incorrect as a matter of law and rendered the verdict untenable; and (3) for written description, the jury was misinformed and misled, and the Defendants failed to put on evidence of inadequate written description for limitations of Claims 21 and 23-25. Therefore, with respect to amendment, DNT asserts that the judgment should be amended to reflect that the presumption of validity of claims 21 and 23-25 should not be disturbed in paragraphs 6, 7 and 8 of the Court's January 15, 2010 Judgment.

### A.  Enablement

Under 35 U.S.C. § 112, a patent must describe, enable, and set forth the best mode of carrying out the invention. Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushki Co., 535 U.S. 722, 736 (2002). In order to enable the claims of a patent pursuant to § 112, the patent specification must teach those of ordinary skill in the art "how to make and use the full scope of the claimed invention without undue experimentation." Liquid Dynamics Corp. v. Vaughan Co, Inc., 449 F.3d 1209, 1224

6

(Fed. Cir. 2006) (citing Bruning v. Hirose, 161 F.3d 681, 686 (Fed. Cir. 1998)).

DNT contends that Defendants' argument that the breadth of Claim 21 included embodiments not enabled by the '660 Patent was flawed. DNT also argues that Dr. Mihran's testimony about enablement was flawed because he did not address undue experimentation and offered that because DNT's claims covered wireless modems, which words were not mentioned in the '660 patent specification, the four asserted claims were not enabled. To the extent that DNT now objects to Dr. Mihran's testimony, it failed to do so in context at trial. The Court ruled in its December 1, 2009 Order on DNT's Motion in Limine regarding Dr. Mihran's testimony that objections in context would be necessary. DNT is not warranted a new trial if it failed to object to the alleged impropriety giving rise to the Motion. See Dennis v. Gen. Elec. Corp., 762 F.2d 365, 367 (4th Cir. 1985).

Furthermore, the Court adopts the Defendants' side of this argument. There was certainly sufficient evidence presented by Defendants from which the jury could reasonably decide the facts that support the legal conclusion that the invention was not enabled. This included testimony from Dr. Mihran about the lack of RF transmission suggestion in the specification, practical problems arising from inserting the device into a computer, and the lack of clarity about how the microphone and speaker in the auto-dialer would function.

## B. Obviousness

35 U.S.C. § 103 "forbids issuance of a patent when 'the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.'" KSR Int'l Co. v. Teleflex, Inc., 550 U.S. 398, 405, 127 (2007) (quoting 35 U.S.C. § 103).

DNT argues that Dr. Mihran failed to demonstrate the presence of specific claim limitations

in the prior art and the basis by which the prior art should be combined in order to render the entire claim invalid as obvious. Defendants describe how they presented substantial evidence, through witness testimony, that all elements of Claim 21 were fully disclosed in prior art. This included Dr. Mihran's testimony regarding U.S. Patent 5,043,721 ("May '721 patent") and U.S. Patent 4,529,870 ("Chaum '870 patent") and their disclosure of all aspects of Claim 21, as well as U.S. Patent 4,868,376's ("Lessin '376 patent") disclosure of multiple aspects of the Talton auto-dialer.

Defendants note that Dr. Mihran also opined that the dependent Claims 23-25 were rendered obvious by the Worldport device, as it disclosed a credit card sized communications device, a plurality of control lines coupled to a processor, and a data bus and address bus coupled to the processor. Mihran also discussed how U.S. Patent 4,972,457 ("the O'Sullivan '457 patent") disclosed a cellular modem that would fit into a laptop computer and couple to a cellular network.

The Court agrees with Defendants. They presented evidence that all elements of Claim 21 were fully disclosed in prior art, and that Dependent Claim Nos. 23-25 were rendered obvious by the Worldport devices. Dr. Mihran provides the evidence-which establishes a factual basis for the legal conclusion-that the invention was obvious. To the extent that DNT attacks Dr. Mihran's articulation of an "overly broad" standard for identifying obvious prior art, again, DNT should have raised these objections in context at trial. Even if they had, however, the Court finds sufficient evidence presented to support the conclusion that the invention was obvious.

### C. Inconsistency of Verdict

DNT claims that the jury verdict is fatally flawed. It asserts that considering a claim both nonenabled and obvious is inherently suspect when the same technology is used to make the assertions that one skilled in the art would not know what is well-known in the art for enablement, but would know it for obviousness. DNT argues that these two things cannot be proved based on

the same evidence without an irreconcilable conflict. Because the Fourth Circuit has held that inconsistent verdict require a new trial, DNT requests the Court to do the same here. See Talkington v. Atria Reclamelucifers Fabrieken BV (Cricket BV), 152 F.3d 254 (4th Cir. 1998).

Defendants argue that numerous other district courts have recognized that simultaneous obviousness and non-enablement findings are compatible. See, e.g. Pharm. Resources, Inc. v. Roxane Labs., Inc., No. 03-3357 (ORD), 2006 WL 3231427, at *16 (D.N.J. Nov. 8, 2006) (finding expert's testimony that full scope of asserted claims was not enabled because person of ordinary skill in the art is not taught how to practice the full scope of the claim was not inconsistent with his opinion that it would have been obvious to arrive at invention through other chemical experimentation); Imperial Chem. Indus., PLC v. Danbury Pharmacal, Inc., 777 F. Supp. 330, 373-74 (D. Del. 1991); Cosden Oil & Chem. Co. v. Am. Hoechst Corp., 543 F. Supp. 522, 544 (D. Del. 1982).

Although DNT argues that these cases involved chemical technologies, which it asserts are not predictable arts, the Court finds Defendants' argument persuasive. They assert that their enablement defense was predicated, in part, on their assertion that the specification did not provide guidance on how to make and use a credit card sized RF communications device, and thus did not enable the full scope of the invention. They based their obviousness defense, in part, on "telephone wired" modem art, like the Worldport, and were not required to establish at trial, and did not assert, that credit card sized RF communications devices were prevalent in the art in 1990.

The Court finds that DNT waived its right to a new trial based on the alleged inconsistency of the jury verdict because it did not raise the issue prior to the release of the jury. See Dennis, 762 F.2d at 367. However, even if DNT had not waived this right, the Court accepts the Defendants' argument. As Defendants noted, it is possible for a claim to be obvious because of various prior art

9

references while still non-enabled given severe deficiencies in the claim specification.

## D. Invalidity Based on Lack of Written Description

According to 35 U.S.C. §112, a patent specification "shall contain a written description of the invention." 35 U.S.C. § 112. To satisfy this requirement, the specification "must describe every element of the claimed invention in sufficient detail so that one of ordinary skill in the art would recognize that the inventor possessed the claimed invention at the time of filing." Messagephone, Inc. v. SVI Sys., Inc., 243 F.3d 556 (Table), 2000 WL 1141046, at *6 (Fed. Cir. 2000) (citing Vas-Cath Inc. v. Mahurkar, 935 F.3d 1555, 1563 (Fed. Cir. 1991)). Although the exact terms employed in the claims need not appear verbatim in the specification, "the specification must provide an equivalent description of the claimed invention through use of other descriptive words, "structures, figures, diagrams, formulas, and so forth." See Messagephone, 243 F.3d at *6 (citations omitted).

DNT asserts that its four claims in the '660 patent contained sufficient support to satisfy the written description requirement. It argues that Defendants failed to put on evidence directed to the inadequate written description of the limitations of each asserted claim, and subsequently failed to meet their burden of showing, by clear and convincing evidence, written description invalidity. Because of this, DNT argues that the judgment finding invalidity for lack of written description must be amended.

Defendants respond that they met their burden to establish invalidity based on inadequate written description by showing that at least one limitation was not adequate in the patent specification. They point to evidence presented at trial that one of ordinary skill in the art would recognize that the inventor did not possess the claimed invention at the time of filing because of the '660 patent's failure to contain an adequate written description of the input/output port limitation, a modem or device that mediates the exchange of data between a computer and telephone network,

10

and a device that connects to a cellular network between a computer and cellular network.

DNT further argues that Dr. Mihran compared the specification to future embodiments and the accused devices by using the terms "cellular" and "cellular network," in his testimony and failing to acknowledge that only adequate support was needed to meet the written description test. DNT asserts that Mihran thereby articulated an overly strict legal standard, requiring that the inventor possess, at filing, the technology implicated at the time of infringement. It argues that his use of the word "now" when stating that written description examined whether, at the time of the invention, a person of ordinary skill in the art "reading this patent understands that the inventor was in possession, if you will, of what is now claimed to be coverage of this patent," (Trial Tr. 1232:16-1234:3) mislead the jury, and resulted in a flawed verdict. DNT also argues that the Court's jury instructions were inconsistent with the law.

Defendants respond that Dr. Mihran tracked the language of the Federal Circuit, patent statutes, and the PTO's manual of patent examination and procedure. See, e.g., Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991) (finding that "[t]he invention is, for purposes of the written description inquiry, whatever is now claimed.") (citations omitted). Additionally, Dr. Mihran quoted directly from the relevant statute in his testimony, 35 U.S.C. § 112, in describing what the specification shall contain. Defendants state that even if any misstatement of law occurred, it was harmless error because the Court accurately instructed the jury on the law of written description. The Court agrees, and finds DNT's arguments unavailing.

The jury found that the asserted claims were invalid for lack of written description. The Court finds that there was clear and convincing evidence to support the finding that the written description was inadequate. There was no error in the Court's instruction on written description, and no prejudice to DNT in that instruction. Rule 59(e), as noted, is an extraordinary remedy, and may

11

not be used to resurrect facts and legal theories already considered and rejected by the court. See Pacific Ins. Co., 148 F.3d at 403. DNT's Motion rehashes old arguments that it made to the jury during trial, which the jury rejected, and for which a motion for a new trial or to amend a judgment is inappropriate.

## IV. NON-PARTY QUALCOMM'S MOTION FOR COSTS AND ATTORNEYS' FEES PURSUANT TO F.R.C.P. 45

On June 26, 2009, DNT served a discovery subpoena on Qualcomm which sought both documents and deposition testimony from Qualcomm "sufficient to show" the detailed specifications and inner-workings of ten Qualcomm chips, to include "any component manufactured by Qualcomm and contained within" any of the ten products. (Qualcomm Mot. Ex. A). Qualcomm objected in writing, claiming that the subpoena was overly-broad and unduly burdensome. Qualcomm asserts that rather than incur additional litigation costs, it elected to negotiate with DNT through a meet-and-confer process in order to narrow and clarify DNT's requests. DNT added to the scope by adding an additional eleventh chip.

Qualcomm asserts that during the summer of 2009, it diligently sought to identify the necessary documents and witnesses to answer DNT's subpoena before DNT's deadlines. Each of the eight document requests covered ten distinct Qualcomm chips, and Qualcomm had to interview and collect documents from personnel working on each chip family. Qualcomm ultimately produced close to 17,000 pages in four separate productions from July through October 2009, and provided three 30(b)(6) witnesses in response to the subpoena. Qualcomm asserts that it continued to work on identifying declarants to authenticate the produced documents up to the eve of trial.

In the instant Motion, Qualcomm asserts that because DNT sought categories of information that were ill-defined and overly broad, its outside counsel accrued $92,194.33 in fees and

reimbursable costs reviewing documents for responsiveness and privilege, producing documents, and in preparing and defending the depositions. (Kyle Decl. ¶10 and Ex. G.) In its opening Memorandum, Qualcomm asserts two grounds for recovery of its attorneys fees and costs: (1) as reimbursement pursuant to Rule 45 of the Federal Rules of Civil Procedure; and (2) as a sanction against DNT for its abuse of the subpoena power under Rule 45(c)(1).

Qualcomm argues that it is entitled to reimbursement under Rule 45(c) because although it complied with the subpoena, it put DNT on notice of the undue burden and expense of complying "in the hope that it might later be able to recover its costs and fees." Qualcomm offers no case law in support of this argument. The Court finds that recovery through reimbursement under Rule 45 is not proper as Qualcomm voluntarily complied with the subpoena without conditioning its compliance on reimbursement. See, e.g. Angell v. Kelly, 243 F.R.D. 135, 139 (M.D.N.C. 2006). Thus, because Qualcomm did not wait for this Court, or the Court that issued the subpoenas, to order compliance, it does not have the right to seek reimbursement under Rule 45 for the costs associated with its production. See Id. at 138 (finding that filing an objection to subpoenas did not qualify non-party for reimbursement under Rule 45 where the requester had not filed a motion to compel production and the court had not ordered production).

Under Rule 45(c)(1), attorneys' fees are available if the party serving the subpoena does not take "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1). Qualcomm requests the Court award it costs and fees as a sanction under this alternative.

DNT responds that Rule 45 is inapplicable in this instance because Qualcomm is a non-party and thus lacks standing, and because a court in the Southern District of California, not this Court, issued the subpoenas.

The Court agrees that Qualcomm is not in a position to recover its costs and fees under Rule 45(c)(1) from this Court. Rule 45(c)(1), by its language, delegates the authority to award fees related to overbroad subpeonas to the issuing court. That provision provides:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(c)(1). Because this Court did not issue the subpoena, it does not have the authority to award fees under this provision.

In its Reply, Qualcomm alternatively asks the Court to award it costs and fees through its inherent powers to sanction DNT for the breadth and burden of its subpoenas. However, in order to invoke its inherent powers in these circumstances, the Court must find a certain degree of bad-faith conduct. See Howell v. Nesbitt, 149 F.3d 1168 (Table), 1998 WL 340291, at *3 (4th Cir. 1998) (noting that attorney's fees are appropriate under the court's inherent powers if: (1) the party's litigation efforts directly benefit others; (2) a party has willfully disobeyed a court order; or (3) a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons) (citing Chambers, 501 U.S. 45); see also In re Weiss, 111 F.3d 1159, 1171 (4th Cir. 1997) (noting that a federal court "possesses the inherent power to regulate litigants' behavior and to sanction a litigant for bad-faith conduct.") (citing Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991)); United States v. Shaffer, 11 F.3d 450, 462 (4th Cir. 1993); Morning Star Baptist Church v. James City County Police, 480 F. Supp. 2d 853, 859 (E.D. Va. 2007).

Although the Court reserves judgment on whether the subpoenas were in fact overbroad and placed an undue burden on Qualcomm under Rule 45, it has reviewed Qualcomm's Motion and arguments in the context of an award under its inherent power to sanction. The Court does not find that DNT acted in bad faith in pursuing its subpoenas with Qualcomm, as the information sought by

14

DNT was highly relevant to the litigation. The accused products in the litigation were Defendants wireless modem cards, and an important component of those cards in this litigation were the "baseband chips" (or "baseband processors"). A majority of the accused devices contained a baseband processor designed by Qualcomm, and therefore the evidence of the internal workings of the chips was of some importance to DNT's infringement case, at least enough to prevent this Court from finding that the subpoena was sought in bad faith. Finding no authority to award the Qualcomm costs or fees under Rule 45, the Court therefore DENIES Qualcomm's Motion.

## V. DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants renew their Motion for Judgment as a Matter of Law ("JMOL") of Invalidity under 35 U.S.C. § 251. A Court may grant a motion of this type for JMOL under Federal Rule of Civil Procedure 50(b) if, after considering all of the evidence presented and viewing all reasonable inferences in a light most favorable to the non-movant, the court determines that the facts and inferences point so strongly in favor of the movant that a rational jury could not arrive at a contrary verdict. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149-51 (2000). A renewed motion for judgment as a matter of law is "not an occasion for the Court to usurp the jury's authority to weigh the evidence and gauge the credibility of witnesses." Thompson v. Direct Impact Co., 63 F. Supp. 2d 721, 723 (E.D. Va. 1998) (citing Taylor v. Home Ins. Co., 777 F.2d 849, 854 (4th Cir. 1985)).

Defendants moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) at the close of DNT's case based on a renewal of the recapture argument from their summary judgment motion. At that time, DNT argued that the recapture doctrine did not apply, and rested on its summary judgment briefing. Defendants renewed their motion at the close of all evidence. The court orally denied both of Defendants' Motions at trial.

The recapture rule prevents a patentee from regaining through reissue the subject matter that he surrendered in an effort to obtain allowance of the original claims. Kim v. ConAgra Foods, Inc., 465 F.3d 1312, 1321 (Fed. Cir. 2006). Recapture should apply if the Defendants prove, by clear and convincing evidence, that the following are true: (1) the reissue claims are broader than the patent claims; (2) there was clear and unmistakable surrender of subject matter during prosecution; (3) the broadening of the claims directly relates to the surrendered subject matter; and (4) the claims were not materially narrowed in other respects. See Id. Claims that are broader than the original patent claims "in a manner directly pertinent to the subject matter surrendered during prosecution are impermissible." Hester Indus., Inc. v. Stein, Inc., 142 F.3d 1472, 1480 (Fed. Cir. 1998).

In the instant Motion, Defendants argue that the asserted claims are invalid because they recapture precise prior art overlap that the patentee intentionally relinquished to obtain the original claims. They argue that during prosecution of the original claims, the patentee surrendered claim coverage of "non-automatic" systems via amendment and repeated the argument to the PTO, amending the claims to recite "automatically" to distinguish over U.S. Patent No. 4,737,984 ("the Brown prior art reference"). In the reissue Claim 21, patentees do not list the "automatically" limitation. Therefore, Defendants argue, the reissue claims improperly recapture surrendered subject matter and are invalid. See, e.g. In re Clement, 131 F.3d 1464, 1469 (Fed. Cir. 1997).

Defendants also argue that the patentee surrendered claim scope during prosecution of the original claims when it explicitly distinguished U.S. Patent No. 4,870,679 ("the Hanna prior art reference"). The patentee tried to recapture this, they argue, when he utilized reissue Claim 21 "to capture devices exactly like Hanna" during litigation.

In response, DNT argues that Defendants have not carried their burden to demonstrate clearly and convincingly that the inventor in fact surrendered any subject matter in order to obtain

16

the '352 Patent that he subsequently tried to "recapture" in the '660 Patent reissue application, including the alleged recapture of non-automatic devices and direct electrical connections to the telephone network. See Hester, 142 F.3d at 1480. DNT also argues that the Court has already addressed this issue on numerous occasions, both at the Markman hearing and at Summary Judgment. Because Defendants have not raised any new issues or facts in their renewed JMOL or stated another basis for seeking reconsideration of the Court's ruling, DNT argues that "common-law adjudication" mandates "that an issue once determined by a competent court is conclusive." Arizona v. California, 460 U.S. 605, 519 (1982).

In Reply, Defendants argue that DNT's reliance on law of the case doctrine is misplaced, and that the Court's denial of summary judgment on the issue is not controlling. See, e.g. Washington v. Digital Equip. Co., 968 F.2d 1213 (Table), 968 F.2d 1213, at *7 (4th Cir. 1992).

The Court does not address the law of the case argument, as it finds that Defendants have not met their burden to demonstrate clearly and convincingly that DNT recaptured subject matter in the '660 Patent reissue application that was surrendered in the '352 Patent. The issue of recapture in this instance was debatable, and a rational jury could, as it did in this instance, reject Defendants' argument. Therefore, the Motion is DENIED.

## VI. DNT'S MOTION TO STRIKE DEFENDANTS' REPLY IN SUPPORT OF THEIR BILL OF COSTS

Shortly after Defendants filed their Reply brief in support of their Motion for Costs under 54(d) (Doc No. 565) and Amended Bill of Costs (Doc. No. 566), DNT filed a Motion to Strike the Reply for what it asserts is new evidence and argument included improperly therein. In the alternative, DNT asks the Court to allow it to file a Surreply to respond to Defendants' arguments.

DNT argues that as discussed in its Opposition to Defendants' Bill of Costs (Doc. No. 548),

Defendants bear the burden to prove that each cost for which they seek compensation is a taxable expense under 28 U.S.C. § 1920.  Cofield v. Crumpler, 180 F.R.D. 510, 514 (E.D. Va. 1998).  DNT argues that Defendants responded to that Opposition with new evidence by way of their Exhibits 1 through 4 & EE, which consist of two attorney declarations, a "stack of deposition invoices" not previously presented to the Court, a receipt omitted from Defendants' Bill of Costs, and a travel website print out.  DNT also contends that Defendants present "new" legal arguments in their Reply by contending that DNT waived objection to video deposition costs, citing Morrison v. Reichhold Chems, Inc., 97 F.3d 460, 464-65 (11th Cir. 1996).

To the extent that DNT addresses the merits of this "new" evidence, including its argument that Eric Rusnak's Declaration only addresses Mr. Talton's deposition, and that Defendants' printout of the Dublin airline ticket demonstrates an overreaching request on Defendants' part, the Court will not consider the arguments as they go to the weight of the evidence, as opposed to its admissibility.

Additionally, Defendants' other evidence is properly submitted with its Reply brief because it specifically relates to issues raised in the initial motion.  The alleged "stack" of invoices consists only of deposition notices, not invoices, all of which were drafted and served by DNT.  Defendants proffered the invoices in further support of their assertion that DNT noticed each deposition to be recorded by video.  Defendants' travel invoices, Exhibit EE, were proffered to show that the cost of a roundtrip business class ticket from Dublin, Ireland to Richmond, Virginia, was not significantly more expensive than the cost of a roundtrip economy ticket on the same carrier in response to DNT's argument about the appropriateness of Norman Tom's flight.  Sprint's corrected invoices are not new evidence, and the Alltell witness travel expenses that DNT moves to strike were claimed in the opening brief.  Defendants submitted the Ryan McBrayer and Rusnak Declarations to respond to DNT's opposition arguments concerning the necessity of certain deposition and translation costs.

These Declarations do not constitute new evidence that is normally prohibited in a reply brief. See Ilozor v. Hampton Univ., No. 4:06CV90, 2007 WL 1310179, at *13-14 (E.D. Va. May 3, 2007); Baugh v. City of Milwaukee, 823 F. Supp. 1452, 1457 (E.D. Wis 1993) (noting that "where the reply affidavit merely responds to matters placed in issue by the opposition brief and does not spring upon the opposing party new reasons for the entry of summary judgment," it should not be stricken).

DNT also argues that Defendants make new legal arguments in their Reply brief by asserting for the first time that DNT waived its objections to their request for video deposition costs. DNT contends that Defendants' argument contradicts the Court's Guidelines and is based in "extrajudicial" case law, as they cite to Morrison for the proposition that DNT waived these objections. Because Defendants raised this argument on Reply, DNT asserts that it has been denied an opportunity to respond.

The Court finds that on the issue of Defendants' discussion of waiver of deposition costs and Morrison, Defendants did put forth new evidence and argument not offered in their opening brief which it will therefore not consider. Defendants' remaining arguments and submissions which DNT contests as new, upon examination, are not. Defendants' other contested submissions are simply responsive to DNT's arguments made in its Opposition brief. Therefore, the Court will DENY the Motion to Strike, but will not consider the issue of the Morrison waiver in its analysis. Subsequently, DNT's request to file a surreply is DENIED.

## VII. CONCLUSION

For the foregoing reasons, Defendants' Renewed Motion for Judgment as a Matter of Law (Doc. No. 554) and Motion to Declare Case Exceptional (Doc. No. 538) are DENIED. Additionally, Non-Party Qualcomm's Motion for Costs and Fees Pursuant to Rule 45 (Doc. No. 546), DNT's Motion for a New Trial, or in the Alternative, to Amend Judgment (Doc. No. 555 & 556 ), and DNT's

Motion to Strike Defendants' Reply in Support of Bill of Costs (Doc. No. 572) are DENIED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

_____/s/_____  
James R. Spencer  
Chief United States District Judge

ENTERED this __30th__ day of August 2010